| | | |
|---|---|---|
| LORETTA Z. SLIGER, | ) | |
| | ) | **Putnam County Chancery** |
| Petitioner/Appellee, | ) | **No. 95-125** |
| | ) | |
| VS. | ) | |
| | ) | |
| BILLY J. STOKES, Commissioner | ) | |
| of the Tennessee Department of | ) | **Appeal No.** |
| Employment, | ) | **01-A-01-9609-CH-00403** |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| COOPER INDUSTRIES, WAGNER | ) | |
| LIGHTING DIVISION, | ) | |
| | ) | |
| Respondent/Appellant. | ) | |

**FILED**

April 11, 1997

Cecil W. Crowson
Appellate Court Clerk

### IN THE COURT OF APPEALS OF TENNESSEE
### MIDDLE SECTION AT NASHVILLE

### APPEAL FROM THE CHANCERY COURT OF PUTNUM COUNTY
### AT COOKEVILLE, TENNESSEE

### HONORABLE VERNON NEAL, JUDGE

MS. MARLA K. WILLIAMS, BPR. NO. 014167
Rural Legal Services of Tennessee
P.O. Box 637
Cookeville, Tennessee 38501
ATTORNEY FOR PLAINTIFF/APPELLEE


CATHERINE B. CASTLEMAN, BPR. No. 009758
Tenn. Dept. Of Employment Security
12th Floor, Volunteer Plaza
500 James Robertson Parkway
Nashville, TN 37245-0100
ATTORNEY FOR DEFENDANTS/APPELLANTS

JIM H. CAMP, BPR. No. 003029
P. O. Box 540
Sparta, TN 38583
ATTORNEY FOR DEFENDANTS/APPELLANTS

### REVERSED, VACATED AND REMANDED

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

SAMUEL L. LEWIS
BEN H. CANTRELL, JUDGE

| | |
|---|---|
| LORETTA Z. SLIGER, | ) |
| | )      **Putnam County Chancery** |
|      Petitioner/Appellee, | )      **No. 95-125** |
| | ) |
| VS. | ) |
| | ) |
| **BILLY J. STOKES, Commissioner** | ) |
| **of the Tennessee Department of** | )      **Appeal No.** |
| **Employment,** | )      **01-A-01-9609-CH-00403** |
| | ) |
|      Respondent, | ) |
| | ) |
| and | ) |
| | ) |
| **COOPER INDUSTRIES, WAGNER** | ) |
| **LIGHTING DIVISION,** | ) |
| | ) |
|      Respondent/Appellant. | ) |

# O P I N I O N

This is an unemployment compensation case in which the petitioner sought judicial relief from the denial of benefits by filing a petition for certiorari as provided by TCA § 50-7-304(h). The Trial Judge reversed the denial of benefits and remanded to the Agency for award of benefits. The employer, Cooper Industries, Wagner Lighting Division, has appealed and presented the following issue:

> Whether the Trial Court erred in reversing the findings of the Administrative tribunal, there being substantial and material evidence in the record to support the decision of the Board of Review.

The employee has presented the following issues:

> I.       Whether an employee whose employer sends a letter of termination while she is out on medical leave is discharged or has voluntarily quit.

> 2.       Whether the voluntary quit disqualification provision found at Tenn. Code Ann. § 50-7-303(a) (1) is applicable to this case.

> 3.       Whether Ms. Sliger was able and available for work.

The brief of the employer admits that petitioner was employed by the employer from December 11, 1978, until August 9, 1994.

In February, 1994, the employee suffered a broken leg in an accident unrelated to her work. The employer granted her a medical leave of absence.

On May 12, 1994, the employee filed with the Department of Employment Security an application for employment benefits. In response to an inquiry from the Department, the employer responded on May 17, 1994:

> Loretta is on a "Leave of Absence" - medical with our company. She has not terminated her employment with us as of to date (sic).

In May, 1994, the employee requested termination of the medical leave and reassignment to work, supported by certificate of her physician dated May 11, 1994 and stating:

> The individual is able to work with the following restrictions: Not able to stand or walk at work.

The employee's request was not granted.

On May 24, 1994, the application for benefits was denied. On July 27, 1994, the denial was affirmed by the Appeals Tribunal.

The employer had a policy that terminated employees who used 180 days of leave in one year. As to her knowledge of this rule, the employee testified:

> Mr. Martin: On medical leave it was redesigned, so they - they have a policy at the Lighting - at Cooper Lighting that - that you're automatically terminated after you expire 180 days leave in one year?
>
> Ms. Sliger: I was completely unaware of this until I was off two and a half months. I asked other people inside the factory. They were unaware of it. When I got my termination statement they were made or had - they acknowledged it then to the factory.

On August 10, 1994, the employer wrote the employee as follows:

> I hope this letter finds you in good spirits and returning to good health. As you are aware, our company policy provides an employee up to 180 days in a calendar year

for a medical leave of absence. Your leave of absence began in February of 1994 and is still continuing. However, you have reached your maximum amount of time, as of August 9, 1994, for a leave of absence and now we must remove you from employment with us.

If you have questions regarding your Co-Sav and Retirement Account, please contact Kathy Clouse. Attached is a letter and election form explaining continuation of health care (COBRA) coverage.

On August 16, 1994, the employee filed a second claim for compensation supported by the following statement:

I have not worked since I filed my last claim. I am still under the care of my doctor - I have been released to return to other work - but I still can not do standing work. I did injure myself in an accident off of the job. I was on medical leave but my medical leave expired 8-9-94. My regular job that I had with Cooper Industries once required climbing stairs - that is no longer required on that job. Since the job no longer requires climbing I can do my regular job.

On August 26, the Department denied the second claim because the employee was not able to work.

On August 31, 1994, the employee's physician certified:

This individual is able to work with the following restrictions: No climbing, continuous standing or walking. Expect two months before regular full duty work. May do sitting work.

The employee appealed to the Department Appeals Tribunal which held a hearing on September 27, 1994.

On September 29, 1994, the Tribunal rendered its decision affirming the decision of the Department, stating:

FINDINGS OF FACT: Claimant's most recent employment prior to filing this claim was with Cooper Lighting, from October 27, 1980, until August 9, 1994, as a manufacturing attendant. Claimant was injured in a non-work related accident that broke both bones in her leg. Employee refused

to offer employment based on her restrictive medical statement containing no standing or constant walking. Claimant requested a seated job such as inspector, but was denied. Claimant was then terminated on August 9 by letter dated August 10 for exceeding the leave policy of 180 days in a calendar year. Claimant continued to look for employment that met her conditions and was successful in finding employment for 22 hours per week which required standing 75 percent of the time. This job began on September 20, 1994, and she works as a maid. Claimant also returned to her doctor and received a less restrictive statement that requires no climbing, continuous standing, or walking. She was told it would be two months before she could do regular, full-duty work. She is allowed to do seated work. Claimant said she is continuing to look for work and is not limited by shift or hours.

CONCLUSIONS OF LAW: The Appeals Tribunal is of the opinion claimant has not presented her employer with competent medical statement that released her to perform her normal duties. The employer is under no duty to provide claimant with an alternative job which is not her regular job. We find claimant was ineligible effective week ending August 20, 1994, due to not being released by her doctor as able to return to her normal job. Claimant is ineligible under the meaning of TCA 50-7-302(a)(4). The Agency decision is affirmed.

The employee appealed to the Board of Review on the following issue:

TCA § 50-7-303 (a) (1) - whether claimant voluntarily left her job without good cause connected with work; if claimant was forced to leave work due to sickness or disability (supported by competent medical proof), whether she notified her employer of this as soon as reasonably practical and returned and offered herself to perform her former duties as soon as she was able.

TCA § 50-7-302 provides in pertinent part as follows:

**Benefit eligibility conditions**. - (a) Personal eligibility conditions. An unemployed claimant shall be eligible to receive benefits with respect to any week only if the commissioner finds that all of the following conditions are met.

(4) The claimant is able to work, available for work, and making a reasonable effort to secure work. In determining whether the claimant is making a reasonable effort to secure work, the commissioner shall consider the customary methods of obtaining work in the claimant's usual occupation or any occupation for which the claimant is reasonably qualified, the current condition of the labor market, and any attachment the

claimant may have to a regular job.

TCA § 50-7-303(a)(1) provides as follows:

> **Disqualification for benefits.** - (a) Disqualifying Events. A claimant shall be disqualified for benefits:
>
> (1) If the commissioner finds that the claimant has left such claimant's most recent work voluntarily without good cause connected with such claimant's work. Such disqualification shall be for the duration of the ensuring period of unemployment and until such claimant has secured subsequent employment covered by an unemployment compensation law of this state, or another state, or of the United States, and was paid wages thereby ten (10) times such claimant's weekly benefit amount. No disqualification shall be made hereunder, however, if such claimant presents evidence supported by competent medical proof that such claimant was forced to leave such claimant's most recent work because such claimant was sick or disabled and notified such claimant's employer of that fact as soon as it was reasonably practical to do so, <u>and returned to that employer and offered to work as soon as such claimant was again able to work, and to perform such claimant's former duties</u>.

On January 9, 1995, the Board held a hearing at which petitioner testified as follows:

Ms. Williams: Okay. You last worked there in February 1994. Is that right?

Ms. Sliger: Yes.

Ms. Williams: And you left for what reason?

Ms. Sliger: I had a broke leg.

Ms. Williams: And this was a non-work related injury.

Ms. Sliger: Yes.

Ms. Williams: When - at what point, Mrs. Sliger, did you present yourself back to work at Cooper, and request that you be able to return to work there?

Ms. Sliger: As soon as I went and talked to them about my insurance, paying it up. I guess it was two months.

Ms. Williams: Did you feel at the time that you were able to - to do some work there?

Ms. Sliger: Yes.

Ms. Williams: But you didn't feel like you were able to return to your most recent job that you had done there?

Ms. Sliger:      No.

Ms. Williams: Okay.  When - at what point, Mrs. Sliger, did you feel that you were able to return to your past job, which you testified at previous hearings was a manufacturing attendant?  At what point did you think you could go back to that?

Ms. Sliger:      I could have went back - it was before Thanksgiving, I'd say.

Ms. Williams: Okay.  What was the event that led to the separation of your employment, Mrs. Sliger.

Ms. Sliger:      Due to me being out on a medical leave too long, they say.

Ms. Williams: Okay.  And that was - that information was communicated to you by the August 10th letter.  Is that right?

Ms. Sliger:      Yes.

Ms. Williams: And at that time, you were working?

Ms. Sliger:      Yes.

Ms. Williams: Okay.  But you - you wanted to get back - go back to your job at Cooper?

Ms. Sliger:      Yes, because I had almost 16 years in.

Ms. Williams: Okay. And Dr. Branton had gave you some medical restrictions.  Did you feel that you were able to do your past work there as a manufacturing attendant with those restrictions?

Mr. Wilson:     Okay.  Is that - did I understand the last - your last question was you felt like you could do the job of manufacturing attendant with the restrictions?

Ms. Sliger:      Yes.  Where were ---

Mr. Wilson:     In this August 31st ---

Ms. Sliger:      Right.  Uh-huh.

Mr. Wilson:     --- doctor's statement?

Ms. Sliger:      Uh-huh.

Mr. Wilson:     But I take it that Cooper Industries didn't think you could do it with those restrictions?  Is that ---

Ms. Sliger:      Evidently.

Ms. Williams: And this medical certificate was dated August 31st.

Mr. Wilson: Have - have you been back, Ms. Sliger, to reapply for work there since you got that August 10th letter?

Ms. Sliger: No.

Mr. Wilson: You haven't tried? I noticed you're on crutches this morning. Is this on-going recovery from those injuries?

Ms. Sliger: Yes.

Mr. Wilson: Are you still in the process of recovering?

Ms. Sliger: Yes.

On February 15, 1995, the Board issued its decision containing the following:

> FINDINGS OF FACT: The claimant's most recent work before filing this claim was with Cooper Industries, from October 27, 1980, until February, 1994. The claimant left work in February 1994, when she was injured while off duty. She was placed on a leave of absence and was unable to work at all for several months. She was eventually released to perform light duty work. She offered to return but the employer had no light duty work available. In August, the leave of absence expired according to the employer's policy. At that time the employer sent the claimant a politely worded letter telling her that the leave had expired and that she was being "removed" from employment. She still had not recovered from the injury sufficiently to perform her former job.
>
> A few days after receiving the letter, to claimant's doctor released her to do sufficient activity so that she could perform her former job. She did not return and offer herself to the employer to perform full duty. She has not had contact with the employer since being released by the doctor. Instead, she filed this unemployment claim.
>
> CONCLUSIONS OF LAW: The Board of Review holds that the claimant is disqualified for benefits under TCA § 50-7-303 (a)(1), because she voluntarily left her job without good cause connected with the work and did not return and offer herself to perform her former duties as soon as she was able.
>
> The claimant voluntarily left her job in February, 1994, for purposes of this unemployment claim, even though she continued to have some relationship with the employer (see the definition of "unemployment" contained in TCA § 50-7-211). The claimant's separation in February was voluntary and without good cause connected with the work because she left due to an injury that occurred while off duty. Under these circumstances and under TCA § 50-7-303 (a) (1), she is disqualified for benefits until she earns ten times her weekly benefit amount in other employment, or until she sufficiently recovers to perform her former job, returns to the

employer and offers to work and is not reemployed. In this case the claimant did not return to the employer and offer to work when she sufficiently recovered to perform her former duties. Therefore she is disqualified for benefits under TCA § 50-7-303 (a) (1). The decision of the Appeals Tribunal is affirmed.

DECISION: The decision of the Appeals Tribunal is affirmed and the claim is denied as of the date of filing under TCA 50-7-303(a)(1).

Upon petition for certiorari, the Trial Court considered the matter upon the administrative record and held:

> After consideration of the arguments of both parties and the entire record, the Court finds and holds that Loretta Z. Sliger was wrongfully terminated by her employer and there is material and substantial evidence in the record to support the Board of Review's conclusion that Ms. Sliger was able to work when she filed her claim, but the decision of the Board of Review that the petitioner voluntarily quit her job without good cause connected with her work is not supported by evidence which is both material and substantial in light of the entire record, and its decision that she voluntarily quit is erroneous as a matter of law. The decision of the Court is more fully set forth in the Memorandum Opinion entered on January 2, 1996; that opinion is fully incorporated herein but need not be repeated verbatim.

The memorandum of the Trial Judge contains the following:

> The Board of Review concluded that claimant did not reapply for work with Cooper Industries after having received the medical report from Dr. Bratton dated August 31, 1994. The court is unaware of any case or authority which requires an employee to return to an employer who has discharged such employee in violation of its own work policies and reapply for work in order to be eligible for unemployment compensation benefits. It is apparent in this case that such requirement would have been an unreasonable and fruitless effort inasmuch as the employer terminated her employment and demonstrated it had no desire to let her work so long as any physical restrictions existed.
>
> The court finds and holds that claimant was wrongfully terminated by her employer and there is material and substantial evidence in the record to support the Board of Review's conclusion that Ms. Sliger was able to work when she filed her claim, but the decision of the Board of Review that petitioner voluntarily quit her job without good cause connected with her work is not supported by evidence which is both material and substantial in light of the entire record and its decision that she quit voluntarily is erroneous as a matter of law. Accordingly, the decision of the Board of Review denying petitioner's eligibility for unemployment compensation benefits is reversed,

> and this cause is remanded to the Board of Review for the
> entry of an order awarding petitioner such unemployment
> compensation benefits that she may otherwise be entitled to
> under the unemployment security laws.

From the length of the administrative proceedings narrated above, the reaction of the Trial Judge is understandable. However, it must be remembered that this action does not involve health or disability insurance, or wrongful discharge. It involves unemployment compensation benefits payable only to a person who is able and willing to work, but is discharged or denied restoration after an absence for illness or disability. See TCA § 50-7-303(a) (1).

Unquestionably, petitioner was absent from work, with the permission of her employer, from February, 1994, until her discharge in August, 1994, for a disability from a non-work related injury. Unquestionably, she made a partial recovery and offered to return but was refused because she was not fully recovered. During the pendency of her unemployment claim, she again sought to return, but was denied because her physicians certificate limited her activities. Even though petitioner was of the opinion that she could perform all her former duties with her residual disability, she has not supported her application for reinstatement with her doctor's certificate that her previously certified disability no longer exists. The subsequent, August 31, 1994, certificate of the physician is substantial and material evidence supporting the finding of disability to return to work, ergo present disqualification to receive unemployment benefits..

The foregoing is determinative in the present appeal, hence the effect of the August 10, 1994, termination by the employer need not be considered.

The judgment of the Trial Court is reversed and the decision of the Board of Review is affirmed. All costs, including costs of this appeal are taxed against the petitioner. The cause is remanded to the Trial Court for further appropriate proceedings.

**REVERSED AND REMANDED**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

_____
SAMUEL L. LEWIS, JUDGE

_____
BEN H. CANTRELL, JUDGE